**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JANET RENEE FORD RICKS,

Plaintiff,

vs. CASE NO. 3:10-cv-975-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

---

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claim for supplemental security income (SSI) disability payments. *Id*. This Court has authority to conduct the requested review. 42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #19, Plaintiff's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #21, Defendant's Brief). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated February 15, 2011 (Doc. #15).

Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the

reasons set out herein, the decision is **REVERSED AND REMANDED.**

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI with the Social Security Administration on January 4, 2008 (Tr. 107-10). Plaintiff alleged an onset of disability of January 1, 1993 (Tr. 107).[1] In the Disability Report-Adult dated January 24, 2008, Plaintiff alleged she was unable to work due to Addison's disease,[2] hypothyroidism and depression (Tr. 129-38).[3] The application was denied initially and upon reconsideration (Tr. 45-46). An administrative hearing was held on October 28, 2009 in Jacksonville, Florida before Administrative Law Judge (ALJ) William H. Greer (Tr. 22-44). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Mr. Robert Bradley (Tr. 22, 37-44). Plaintiff was represented at the administrative hearing by attorney Ruth Ann Heplar (Tr. 22). The ALJ issued the decision denying Plaintiff's claim for SSI on January 21, 2010 (Tr. 9-15). Plaintiff requested review of the hearing decision by the Appeals Council, but the request was denied (Tr. 1-3). Thus, the ALJ's decision became the final decision of the Commissioner. Thereafter, Plaintiff's current counsel of record, Chantal J. Harrington, Esq., filed the instant complaint

[1]There is evidence in the record that suggest Plaintiff previously received SSI disability payments prior to an incarceration in 2004 (*see, e.g.*, Tr. 149).

[2]Addison's disease is a disease "characterized by hypotension, weight loss, anorexia, weakness, and sometimes a bronze-like melanotic hyperpigmentation of the skin. It is due to tuberculosis- or autoimmune-induced disease (hypofunction) of the adrenal glands that results in deficiency of aldosterone and cortisol. In the absence of replacement therapy, it is usually fatal." *See* http://www.online-medical-dictionary.org/ (look up "Addison's Disease") last visited 3/26/2012.

[3]Although the Court is unable to ascertain the date on which the Disability Report-Adult form was completed, the records custodian has indicated the report was dated 1/24/2008 (*see* Court Transcript Index, Exhibit B3E, on pages preceding the enumerated pages).

in federal court on October 20, 2010 (Doc. #1 at 1).

**SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND THE STANDARD OF REVIEW**

A plaintiff is entitled to disability benefits under the Social Security Act only when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.[4] The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The ALJ's decision dated January 21, 2010 denied Plaintiff's claim (Tr. 9-15). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 2, 2008 (Tr. 11). At step two, ALJ Greer found Plaintiff had the severe impairments of osteoarthritis and hepatitis C (Tr. 11). At step three, the ALJ found these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12). The ALJ next determined that Plaintiff had the residual functional capacity (RFC) "to perform a range of unskilled, simple and moderate

---

[4]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

light work" (Tr. 12).[5] The ALJ elaborated by stating Plaintiff should alternate sitting and standing, and can occasionally bend, stoop and climb stairs, but can never crawl or climb ladders, ropes or scaffolds. *Id*. ALJ Greer further limited Plaintiff's work base by restricting Plaintiff to avoid dangerous machinery and unprotected heights. *Id*. At step four, the ALJ determined Plaintiff had no past relevant work (Tr. 14). Moving on to step five, the ALJ determined there were other jobs with sufficient available positions that Plaintiff could perform, such as ticket taker, school bus monitor or price marker (Tr. 15). Thus, Plaintiff was not found disabled within the meaning of the Social Security Act (Tr. 15).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[5] The Court is unable to determine the definition "moderate light work" as used in the ALJ's decision. Upon review of 20 C.F.R. § 416.967(b), the Court finds "moderate light work" is not defined therein, contrary to what ALJ Greer stated. Thus, finding Plaintiff can do "moderate light work as defined in 20 CFR 426.967(b)" (sic) is not supported by substantial evidence.

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv's.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, Janet Renee Ford Ricks, was born on December 15, 1964 (Tr. 23, 107).[6] Therefore, she was forty-five (45) years old on the date of the ALJ's decision. Plaintiff attended high school through the ninth grade, then later earned her GED (Tr. 23-24, 137). Plaintiff has no past relevant work, although she has worked as a nursery helper and a day laborer (Tr. 24, 131).

Plaintiff raises three issues on appeal (Doc. #19 at 1). First, Plaintiff argues the ALJ failed to properly analyze the consultative opinions of the two psychologists and the medical doctor who examined Plaintiff at the request of the Social Security Administration (Doc. #19 at 1, 7-13). Second, Plaintiff argues the ALJ failed to find or address Plaintiff's diagnoses of Addison's disease and hypothyroidism (Doc. #19 at 1, 13-16). Third, Plaintiff argues the ALJ erred in finding Plaintiff's mental impairments to be non-severe (Doc. #19 at 1, 16-19).

The Commissioner counters the ALJ's decision is supported by substantial evidence (Doc. #21 at 3). The Commissioner specifically argues the ALJ properly weighed the opinion of the examining medical doctor and one of the psychologists (Doc. #21 at 10). Additionally, the Commissioner argues the ALJ properly considered all Plaintiff's alleged mental impairments (Doc. #21 at 5-6). Next, the Commissioner argues Plaintiff did not meet her burden of proving her Addison's disease, hypothyroidism or mental impairments would prevent her from performing simple, unskilled, repetitive jobs (Doc. #21 at 5-6, 11-12). The Commissioner takes the position that any evidence prior to Plaintiff's application

---

[6]Plaintiff testified her date of birth was December 13, 1964 (Tr. 23), but noted December 15, 1964 on the SSI application (Tr. 107).

date is not relevant to the ALJ's decision (Doc. #21 at 8 n4).

Upon review and consideration of the ALJ's decision, the record evidence and the parties' arguments, the Court finds Plaintiff's arguments are meritorious and Plaintiff has presented issues of error that require reversal.

**A. The ALJ's Analysis of the Consultative Opinions**

Plaintiff argues the ALJ's analysis of the consulting examiners' opinions is flawed. Plaintiff specifically takes issue with the ALJ's failure to address the opinion evidence from psychologist Dr. Louis Legum, Ph.D., who found Plaintiff suffered from a severe psychiatric disorder and determined Plaintiff functioned at a GAF score of 55-60 (Doc. #19 at 10).[7] Plaintiff also specifically argues that while the ALJ stated he credited and gave great weight to the opinion of examining physician Dr. Robert Greenberg, M.D., ALJ Greer actually credited only those portions of the Dr. Greenburg's report that supported finding Plaintiff was not disabled, while he ignored Dr. Greenburg's determinations that were favorable to Plaintiff's disability application (Doc. #19 at 10). In this regard, Plaintiff claims ALJ Greer failed to mention Dr. Greenberg's findings of Addison's disease or reduced grip strength, which Plaintiff asserts corroborate her claimed upper extremity limitations (Doc. #19 at 11).

---

[7] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

Plaintiff also argues the ALJ glossed over the report and opinion of psychologist Janet Humphreys, Ph.D., mentioning only the findings that supported the ALJ's decision while ignoring the remainder of Dr. Humphreys' opinion evidence (Doc. #19 at 11-12).

The Commissioner argues the ALJ stated he considered the opinion evidence of record in accordance with Regulations and rulings, and this statement is enough to show the ALJ did so (Doc. #21 at 13; *see also* Tr. 12, "After careful consideration of the entire record. . ."). Specifically, the Commissioner claims Dr. Humphreys' opinion is consistent with the ALJ's RFC, and Dr. Humphreys' assessment was intended to update Dr. Legum's opinion, which did not pertain to the relevant time period (Doc. #21 at 7-8). The Commissioner also asserts Plaintiff relies on her subjective complaints to Dr. Humphreys, rather than objective findings (Doc. #21 at 7). The Commissioner argues the ALJ properly gave great weight to Dr. Greenberg, and expressly considered Dr. Greenberg's finding of reduced grip strength (Doc. #21 at 10).

The Court finds the Commissioner's arguments ignore obvious flaws with the ALJ's decision on this issue. The Regulations require the administrative law judge consider all the evidence of record in making his disability determination, not just the evidence presented that runs from the date of a claimant's SSI disability application forward. *Cf*. 20 C.F.R. §§ 416.927(b) ("we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"), 416.929(a) ("in evaluating . . . your symptoms, including pain, we will consider all of the available evidence"); 416.945(a)(3) ("your residual functional capacity [will be] based on all of the relevant and other medical evidence"); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (the ALJ must consider the claimant's condition as a whole). Moreover, the

Regulations state the Social Security Administration (SSA) will develop a claimant's complete medical history for at least the twelve months preceding the month in which the application for benefits is filed. 20 C.F.R. § 416.912(d). The ALJ failed to show any consideration of Dr. Greenberg's first report and Dr. Legum's opinion, both of which fall into this period.[8]

Robert Greenberg, M.D., saw Plaintiff twice for consultative examinations at the request of the Office of Disability Determinations (Tr. 186-87, 304-305). On June 13, 2007, Dr. Greenberg found decreased range of motion (ROM) of the right shoulder and decreased right grip strength, but noted the fine manipulation of both hands were normal (Tr. 186). He diagnosed Plaintiff with history of Addison's disease, hepatitis C, and probable osteoarthritis of the right arm and hand (Tr. 187). When Plaintiff returned to Dr. Greenberg on March 31, 2008, the physical examination was normal with the exception of decreased ROM in the hips and decreased grip strength in the right hand (Tr. 304). The final diagnosis was probable generalized osteoarthritis, hepatitis C, history of Addison's

[8]The Court is not persuaded by Defendant's argument that evidence prior to the date of Plaintiff's SSI application is not relevant to this case. In this instance, evidence suggests Plaintiff previously received SSI disability payments until an incarceration in 2004 stopped those payments (*see* Tr. 149). *See* discussion *infra*, Section B, Addison's Disease and Hypothyroidism. Evidence in this record includes consultative examinations ordered by the Social Security Administration in 2007 (Tr. 185-91, further identified as Exhibits B1F, B2F from "Prior Folder"). Plaintiff apparently applied for SSI disability payments in 2007 and that application was denied at the initial review stage without further appeal (Tr. 116-18). On the facts of this case, not only does the ALJ have a duty to consider all the evidence of record and a duty to develop the record at least twelve preceding the date of the application, in this case those duties include consideration of evidence which was developed specifically under the direction of SSA personnel.

disease and probable COPD (Tr. 305).[9] The ALJ stated he accorded Dr. Greenberg's opinion "great weight" (Tr. 14). Contrary to Plaintiff's assertion regarding her grip strength, ALJ Greer specifically addressed the observation of reduced grip strength. *See id.* However, the ALJ did not find or discuss Plaintiff's history of Addison's disease as noted by Dr. Greenberg.

On March 4, 2008, Plaintiff reported to Janet Humphreys, Ph.D. at the request of the Office of Disability Determinations for an evaluation of her alleged mental impairment (Tr. 297-300). Plaintiff reported depression, anxiety, difficulty falling and staying asleep, low energy, poor concentration, hallucinations and panic attacks (Tr. 297-298). Plaintiff stated her friends shopped for her and she usually did not cook, but was able to take care of herself and spent her days fishing, gardening, and working on her trailer (Tr. 298). Dr. Humphreys observed Plaintiff had a depressed mood, good judgment and insight, and normal memory, although she noted Plaintiff was unable to perform serial sevens subtractions, double digit addition or simple multiplication (Tr. 299). Dr. Humphreys diagnosed Plaintiff with mood disorder NOS, psychotic disorder NOS, panic disorder with agoraphobia and pain disorder (Tr. 299-300). While the ALJ addressed Dr. Humphreys' diagnosis of Plaintiff's panic disorder, finding it was non-severe, he failed to address any other diagnoses, despite stating he gave Dr. Humphreys' opinion great weight.

Louis Legum, Ph.D., saw Plaintiff and reviewed portions of the record on June 21,

---

[9]COPD (chronic obstructive pulmonary disease) is the general term used for those diseases with permanent or temporary narrowing of the small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied. *See* http://www.medilexicon.com/medicaldictionary.php (search "chronic obstructive pulmonary disease") last visited 3/22/2012.

2007 at the request of the Commissioner (Tr. 188-191). Plaintiff reported she had been prescribed various psychiatric medications since age thirteen (Tr. 188). On examination, Dr. Legum found Plaintiff's thought process was integrated with no hallucinatory or delusional thinking and an intact memory, although her judgment and insight were poor (Tr. 190). He stated Plaintiff's personality disorder played a larger role in the psychopathology than any psychotic difficulties (Tr. 190). Dr. Legum's final diagnosis was "psychotic disorder NOS, provisional; mood disorder due to a general medical condition; personality disorder NOS with borderline traits" and a GAF of 55-60 (Tr. 190-91). The ALJ did not refer to Dr. Legum's opinion evidence in the administrative decision.

Generally, an ALJ's statement that he or she carefully considered the entire record is sufficient to show that he has done so. *Jones v. Dept of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986)). *But see Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) (holding ALJ's statement that he considered the entire record communicates only that the ALJ reviewed the entire record; it does not answer the question of whether his "careful consideration" included a consideration of the plaintiff's entire medical condition). Here, the ALJ credited both Dr. Humphreys' report and Dr. Greenberg's second report, affording them "great weight." However, the ALJ failed to discuss several of the relevant diagnoses that are found in those reports–namely those diagnoses on which Plaintiff based her claim for disability. On the facts of this case, as discussed in more detail below, the ALJ's failure to discuss Plaintiff's history of Addison's disease and depression is reversible error. An ALJ may not pick and choose the parts of the record that will support his decision, but must show he considered the Plaintiff's condition as a whole. *See Dyer,* 395 F.3d at 1210-11;

*Rodgers v. Astrue*, No. 3:10-cv-352-J-TEM, 2011 WL 4346567 at *8 (M.D. Fla Sept. 16, 2011);[10] *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ's failure to show he considered Plaintiff's condition as a whole is reversible error. *Dyer,* 395 F.3d at 1210-11. Therefore, on remand, the ALJ must consider all three consulting opinions in their entirety and show that he has done so in the new decision.

**B. Addison's Disease and Hypothyroidism**

The ALJ is required to consider all of a claimant's impairments, both severe and non-severe, in combination with one another when making his disability determination. 20 C.F.R. § 416.920(a); *see also* SSR 96-8p, 1996 WL 374184, *5 (S.S.A. July 2, 1996) (stating a non-severe impairment must be considered in combination with limitations or restrictions due to other impairments). At step two, the ALJ must consider the medical severity of the impairments. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one which significantly limits the ability to perform basic work activities. 20 C.F.R. § 416.920(c). The finding of at least one severe impairment may be enough to satisfy the requirement of step two of the five-step process if the ALJ's decision clearly reflects consideration of all of a claimant's impairments. *See Jamison*, 814 F.2d at 588 (remanding the case to the Commissioner because the court was unable to determine if at any step in the sequential analysis the ALJ considered the claimant's entire medical condition, but stating in dicta that "the finding of any severe impairment, whether or not it qualifies as a disability and whether

[10] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two"); *see also Perry v. Astrue,* 280 Fed. Appx. 887, 894 (11th Cir. 2008) (finding a generic finding of severe impairments met the step two threshold because the ALJ enumerated and evaluated all of the impairments and symptoms alleged by the plaintiff );*White v. Astrue*, No. 1:08-cv-0827-SRW, 2010 WL 1729113 (M.D. Ala. April 28, 2010) (holding where an ALJ found plaintiff suffered from several specific severe impairments, including a gun shot wound to the head, failure to identify the plaintiff's headaches as a separate severe impairment was harmless error). However in this case, the undersigned finds the egregious failure to discuss two of the impairments Plaintiff alleged as the cause of her disability is not harmless error. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001) (remand was necessary when the ALJ failed to properly consider the plaintiff's condition despite evidence in the record of the diagnosis).

Further, an ALJ has the duty to assess a claimant's residual functional capacity on the basis of all the relevant evidence of record. 20 C.F.R. § 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The impairments include physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 416.945(a). The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. In assessing the RFC, the adjudicator must consider limitations and restrictions imposed by *all of an individual's impairments*, even those that are not severe. SSR 96-8p at *5 (emphasis added). The ALJ must also explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p at *7.

"There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the court to conclude the ALJ considered the medical condition as a whole." *Dyer*, 395 F.3d at 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553); *see also Moncrief v. Astrue*, 300 Fed. Appx. 879, 882 (11th Cir. 2008) (holding the court should affirm the ALJ decision if the ALJ considered all the evidence in the record). However, the administrative decision is not supported by substantial evidence if the ALJ focused on one aspect of the evidence and ignored other parts of the record. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Plaintiff argues she alleged Addison's disease and hypothyroidism as the cause in part of her disability, and therefore the ALJ should have analyzed whether these could reasonably be expected to result in her fatigue, weakness and muscle pain (Doc. #19 at 13). The Court agrees.

In his June 13, 2007 report, Dr. Greenberg noted Plaintiff's diagnosis of Addison's disease at age twenty-four (24) (Tr. 229). Significantly, he linked it to Plaintiff's physical complaints by stating Plaintiff's Addison's disease "has been manifested by severe generalized fatigue, weakness, chronic generalized muscle pain, and shortness of breath" (Tr. 186). He diagnosed Plaintiff with history of Addison's disease, hepatitis C, and probable osteoarthritis of the right arm and hand (Tr. 187).

In 2008, Plaintiff began treatment at Family Medical and Dental Center (Tr. 333-47, 570-96). Plaintiff reported she had some difficulty re-establishing her medical care, and ran out of medication several times (Tr. 343). In July 2009, Plaintiff was prescribed Lortab for complaints of chronic pain in her side, arm, shoulder and hips, and she returned several

times for prescription refills through September 2009 (Tr. 570-96).

An analysis of Addison's disease is particularly relevant in this case. Plaintiff told Dr. Humphreys in 2008 and the doctors at the State of Florida Department of Corrections in 2004 that she had received SSI disability prior to her incarceration due to Addison's disease (Tr. 284, 298). Plaintiff reported she was on SSI disability before she was incarcerated (*see* Tr. 149, Function Report-Adult, dated February 9, 2008; *also see* Tr. 182-84, Attorney Memorandum in Support of Janet Renee Ford Ricks Request for Review of Hearing Decision). This evidence is uncontroverted in the record and is not contested by the Commissioner in his brief. Moreover, the record contains numerous references to Plaintiff's Addison's disease and hypothyroidism, both prior to and during the relevant period (*see, e.g.,* Tr. 186, 188, 232, 259, 395). In fact, references are found in every medical provider's records.

In this case, the ALJ did not determine Plaintiff's Addison's disease was not severe. ALJ Greer made no determination. There is no indication he gave any consideration to this condition. There is no reference in the ALJ's decision to Addison's disease, which apparently was found to be severe and formed the basis for a favorable disability determination in the past. As the Court cannot ascertain whether ALJ Greer gave any consideration to Plaintiff's Addison's disease and the potential limitations on Plaintiff's ability to work arising therefrom, it is unclear whether ALJ evaluated Plaintiff's disability claims in accordance with the Regulations and prevailing case law.

The ALJ's failure to discuss Plaintiff's numerous diagnoses of Addison's disease and hypothyroidism–the bases of Plaintiff's claim for disability–is reversible error. *See Carnley v. Astrue*, No. 5:07cv155/RS/EMT, 2008 WL 3896019 (N.D. Fla. Aug. 21, 2008) (holding

the ALJ erred where he made no mention whatsoever of the plaintiff's mental limitations "and *no obvious explanation [was] provided for their exclusion*") (emphasis in original). On remand, the ALJ must consider effect of Addison's disease and hypothyroidism on Plaintiff's ability to work and discuss whether each qualifies as a severe impairment.

**C. Mental Impairments**

An impairment will be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). However, a medical diagnosis does not necessarily denote a severe impairment under the Social Security Act, nor does it necessarily indicate a limitation on the ability to work. *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002).

The Commissioner correctly argues the ALJ expressly considered Plaintiff's diagnosis of panic disorder with agoraphobia (Doc. #21 at 10-11, Tr. 11). However, Plaintiff did not allege this as a cause of her alleged disability; rather, she claimed she could not work due in part to depression (Tr. 129-38). Plaintiff argues the ALJ skipped over critical exhibits, including a suicide attempt and diagnoses of a psychotic disorder and a personality disorder (Doc. #19 at 17). Plaintiff is correct. There is a huge gap in the evidence of record and the evidence ALJ Greer's decision indicates he considered.[11]

Plaintiff underwent treatment at the Florida Department of Corrections Reception

[11]The administrative decision refers to exhibits B6F, B7F, B19F, B20F and B21F of Plaintiff's evidence. It is unclear whether the ALJ considered the remainder of the twenty-one submitted exhibits.

and Medical Center for depression and anxiety between September 28, 2004 and December 29, 2006 (Tr. 269-84). On October 29, 2004, Plaintiff alleged she had been hospitalized for mental health issues three times: at thirteen years old, in 1992, and again in 1994 (Tr. 292, 284). Psychiatrists at the Reception and Medical Center diagnosed Plaintiff with depressive disorder NOS (Tr. 286). The treatment plan consisted of development of adaptive and coping skills, and psychotropic medications (Tr. 282).

Two psychologists reviewed Plaintiff's records and filled out a Psychiatric Review Technique form; Michael Stevens, Ph.D., on April 7, 2007 and Carol Deatrick, Ph.D., on July 17, 2008 (Tr. 307-20, 356-69). Dr. Stevens found Plaintiff had depression and a history of substance dependence, and Dr. Deatrick agreed the record supported this conclusion (Tr. 310, 315, 356, 359). More specifically, both Dr. Stevens and Dr. Deatrick determined Plaintiff's depression was mild and therefore, her mental condition was not severe (Tr. 307, 319, 356, 359). Both reviewing doctors agreed Plaintiff had mild limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace and no episodes of decompensation (Tr. 317, 366). Dr. Stevens and Dr. Deatrick agreed that while symptoms of depression are corroborated by Plaintiff's prison records, they did not find Plaintiff credible with regard to her other alleged mental impairments and expressed concern about secondary gain issues (Tr. 319, 368).

However, on August 8, 2008, well after the completion of reviewing psychologists' reports, Plaintiff was admitted to Shands Hospital at Lakeshore after a suicide attempt by drug overdose (Tr. 395-99). The nurse reported Plaintiff stated she "just [doesn't] care anymore" and she "wants to die so she can forget her problems." *Id*. The final diagnosis was depression and substance abuse (Tr. 397). The law judge's decision does not reflect

any consideration of this evidence.

The ALJ showed consideration of some of Plaintiff's mental impairments, but failed to discuss Plaintiff's depression–which Plaintiff alleged as a cause of her disability and of which there is evidence throughout the record. The Northern District of Florida held in *Carnley* that the ALJ could have found Plaintiff's depression had no effect on the RFC, but should have stated this and explained why it did not. *See Carnley*, 2008 WL 3896019 at *11. Similarly, on remand, the ALJ should explicitly discuss Plaintiff's allegations and diagnoses of depression, determine whether or not it is a severe impairment, and if so, analyze the effect on Plaintiff's RFC.

An ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Baker v. Barnhart*, No. 03 C 2291, 2004 WL 2032316, *8 (N.D. Ill. Sept. 9, 2004). The ALJ must also "sufficiently articulate" his assessment of the evidence to assure the court that he has considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his conclusion. *Id*. After review of the ALJ's decision and the administrative record, the Court cannot find the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion.

## CONCLUSION

The onus is on the ALJ to provide a clear opinion. "A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984). "The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached." *Russ v. Barnhart*, 363 F. Supp. 2d 1345,

1347 (M.D. Fla. 2005); *see also Keeton*, 21 F.3d at 1066. Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Johnson v. Barnhart*, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002).

As it is impossible for the Court to tell if the ALJ properly considered and weighed all the evidence in the record, this case must be remanded. *See generally*, *Owens v. Heckler*, 748 F.2d at 1515-17 (declining to affirm an ALJ's decision where it was unclear what test the ALJ used in reaching his conclusions and concluding it was not proper to affirm simply because some rationale might have supported the ALJ's conclusions).

Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED for additional proceedings**.[12]

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

---

[12] If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the Plaintiff/claimant to award disability benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

On remand, the ALJ may reopen the record and accept any additional evidence deemed appropriate. The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2012.

Thomas E. Morris
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties, if any